**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S )<br>*a/a/o* BAUSCH HEALTH NETHERLANDS; )<br>and C.H. ROBINSON WORLDWIDE INC., )<br>)<br>        Plaintiff, )<br>   v. )<br>)<br>KONINKLIJKE LUCHTVAART )<br>MAATSCHAPPIJ N.V. and SOCIETE AIR )<br>FRANCE, )<br>)<br>        Defendants. )<br>——————————————— )<br>)<br>KONINKLIJKE LUCHTVAART )<br>MAATSCHAPPIJ N.V. and SOCIETE AIR )<br>FRANCE, )<br>)<br>       Counter-plaintiffs, )<br>   v. )<br>)<br>C.H. ROBINSON WORLDWIDE INC., )<br>)<br>       Counter-defendant. )<br>——————————————— ) | Case No. 1:20-cv-06474-CRN-MV<br><br>The Honorable Charles R. Norgle<br><br>**COUNTER-PLAINTIFFS'**<br>**MEMORANDUM IN OPPOSITION TO**<br>**COUNTER-DEFENDANT'S MOTION**<br>**TO DISMISS COUNTER-PLAINTIFFS'**<br>**FIRST AMENDED COUNTER CLAIMS** |

**PRELIMINARY STATEMENT**

Defendants and Counter-plaintiffs KONINKLIJKE LUCHTVAART MAATSCHAPPIJ

N.V. ("KLM") and SOCIETE AIR FRANCE (together with KLM, "Counter-plaintiffs"), by and

through their attorneys, Valentine Austriaco & Bueschel, P.C. and Condon & Forsyth LLP, submit

this Memorandum in Opposition to Plaintiff and Counter-defendant C.H. ROBINSON

WORLDWIDE INC.'s ("CHR") Motion to Dismiss, under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, Counter-plaintiffs' First Amended Counter Claims. CHR's Motion should be

denied because Counter-plaintiffs have adequately pleaded causes of action for their claims

asserting CHR's liability under the Montreal Convention and Illinois state law.

1

**STATEMENT OF FACTS**

CHR contracted under Bill of Lading No. 279105864 (the "BOL") to transport a shipment of temperature-sensitive medicaments, with a chargeable weight of 5,850 kg, (the "Cargo") from Chaska, Minnesota to Amsterdam, the Netherlands. *See* First Amended Counter Claims, ¶ 6, attached hereto as Exhibit A. Pursuant to the instructions on the BOL, the Cargo had to be kept at 2-8˚C. *See id.* at ¶ 7. On or around October 30, 2018, CHR transported the Cargo from Chaska, Minnesota to Chicago, Illinois and tendered the Cargo to KLM for further transportation. *See id.* at ¶¶ 8-9.

On November 1, 2018, CHR employee Lauren Waligorski, signed and executed—on behalf of the "Issuing Carrier or its Agent"—Master Air Waybill No. 074-18428524 (the "MAWB"), which lists C.H. Robinson ORD Gateway as both the Shipper and Issuing Carrier's Agent and KLM Royal Dutch Airlines as the Issuing Carrier. *See* Master Air Waybill No. 074-18428524, attached hereto as Exhibit B.

On or around November 3, 2018, Counter-plaintiffs timely transported the Cargo to Amsterdam, the Netherlands and emailed CHR several times per day for the following six days to request that CHR pick up the Cargo for further transportation in the Netherlands. *See id.* at ¶ 12. On or around November 9, 2018, six days after the Cargo arrived in Amsterdam, CHR picked up the Cargo and delivered it to the final consignee. *See id.* at ¶ 13.

**PROCEDURAL HISTORY**

On October 30, 2020, CERTAIN UNDERWRITERS AT LLOYD'S ("Underwriters") *a/a/o* BAUSCH HEALTH NETHERLANDS ("Bausch") and CHR ("Plaintiffs") filed their Complaint to recover damages allegedly incurred due to Counter-plaintiffs' alleged breach of contract and trespass to chattel. *See* DE 1. On January 12, 2021, Counter-plaintiffs filed their

Answer and their Counter Claims against one of the plaintiffs, CHR. *See* DE 11. On February 2, 2021, CHR filed its Motion to Dismiss Counter-plaintiffs' Counter Claims. *See* DE 14. On February 23, 2021, Counter-plaintiffs filed their First Amended Counter Claims, which comprise six claims that CHR is liable for Plaintiff Bausch's alleged damages (the "Counter Claims"). *See* DE 18. Counter-plaintiffs' first three counter claims allege CHR is liable under Articles 18 and 20 of the Montreal Convention and their remaining three counter claims allege CHR is liable under Illinois state laws of negligence, indemnification, and contribution. *See id.* On March 22, 2021, CHR filed a new Motion to Dismiss, to which this Opposition responds. *See* DE 22.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded factual allegations in a counter claim and draws all reasonable inferences in favor of the counter-claimant. *See Sears Home Appliances Showrooms, LLC v. Appliance All., LLC*, No. 15-CV-4414, 2017 WL 839483, at *2 (N.D. Ill. 2017) *(citing Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). The Counter Claims should only be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *accord Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (same standard in reviewing a motion to dismiss a counter claim applies as with a complaint).

## ARGUMENT

**I.    Counter-Plaintiffs' Counter Claims Based on Illinois State Law State Claims Upon Which Relief May be Granted.**

Counter-plaintiffs' state-law claims against CHR are exactly the type of counter claims allowed and required under the federal rules, as they arise from the same occurrences underlying the claims against Counter-plaintiffs and require no joinder of additional parties. *See* Fed. R. Civ.

P. 13(a). Nevertheless, CHR contends that these claims should be barred merely because Counter-Plaintiffs are "faced with causes of action against them based on the Montreal Convention." DE 22, p. 7. CHR fails to mention that along with the two Montreal Convention claims, the underlying Complaint asserts the state-law claim of "trespass to chattel," and does not explain why in the same action, a state-law claim may be brought against Counter-plaintiffs but not by them. Regardless, CHR has offered no reasoning for why federal pleading rules should be ignored here, and its challenge to the state-law claims on this basis should fail.

      a. <u>CHR is a joint tortfeasor and an appropriate source of contribution.</u>

      CHR has challenged Counter-plaintiffs' claim for contribution because, CHR contends, it is a plaintiff in the underlying Complaint and not a co-defendant or third-party defendant. CHR attempts to use its participation as a plaintiff in this litigation to mask its actual role in the underlying events. As alleged in the Counter Claims, CHR is a tortfeasor whose conduct caused Bausch to reject the Cargo as allegedly damaged. To the extent that Counter-plaintiffs are found liable for any damages to Underwriters as the assignee of Bausch's claims, then they are entitled to contribution from CHR as a joint tortfeasor. The fact that CHR has piggy-backed itself as a plaintiff on claims arising from alleged harm to Bausch does not change it relationship to Counter-plaintiffs, just the vehicle through which claims are brought against them as a defendant. Whether CHR is labeled counter-defendant, cross-claim defendant, or third-party defendant, it is a joint tortfeasor who, by virtue of these Counter Claims, is a "defendant" and whose conduct proximately caused Bausch's alleged losses. It is accordingly subject to contribution under 735 ILCS 5/2-1117.

      b. <u>Counter-plaintiffs have adequately pled all elements of their negligence claim.</u>

      CHR challenges Counter-plaintiffs' negligence counter claim on only one ground. CHR contends that because Counter-plaintiffs did not pay funds to the consignee Bausch for any alleged loss to its Cargo, they have somehow suffered no injury. For support, CHR cites *Ritter v. Ritter*,

46 N.E. 41, 44 (Ill. 1943) for the unremarkable proposition that as a general matter, parties do not recover attorney's fees from each other in litigation unless a contract or statue requires so. Because Counter-plaintiffs seek attorney's fees and expenses as damages in their negligence claim, CHR incorrectly concludes, they have not alleged an injury.

As CHR's cited caselaw provides, however, a claimant has been harmed and may seek attorney's fees and expenses incurred in addressing that harm, when it has been placed in an adverse position to a third party. The Illinois Supreme Court explained this distinction in *Ritter*:

> [W]here the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees.

*Ritter*, 46 N.E.2d at 44; *see also* RESTATEMENT (SECOND) OF TORTS § 914 ("One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees, and other expenditures thereby suffered or incurred in the earlier action."). That is precisely the situation here.

Counter-plaintiffs have been forced to protect their interests because of the position that CHR–through its negligent conduct that caused Bausch to reject the Cargo–has placed them in with respect to Bausch. Here, as in *Ritter*, "the natural and proximate consequences" of CHR's negligence was Counter-plaintiffs having to incur expenses in protecting its interests pre-litigation and then further incur expenses and attorney's fees when it became "involve[d] . . . in litigation with others," namely Underwriters as the assignee of all of Bausch's claims. *See Ritter*, 46 N.E.2d at 44.

Again, the fact that CHR is a plaintiff here does not change its role in the events that led to Bausch's alleged losses. Indeed, it is unclear why CHR is a plaintiff in this lawsuit at all. It

5

appears from the allegations in the Complaint that the only party to whom Bausch's claims have been assigned is Underwriters. The *only* possible "loss" to CHR alleged in the Complaint is that CHR paid something to Bausch after Bausch submitted a claim to it. The remainder of the allegations, and all damages sought against Counter-plaintiffs in the Complaint, arise from the alleged harm to Bausch. CHR itself has raised no claim through which it could recover from Counter-plaintiffs directly. The fact that CHR has made itself a party in the very litigation its negligence created does not relieve it of liability for the harm its negligence caused, it just means Counter-plaintiffs must raise its negligence claim as a counter claim rather than a third-party claim.

      c. Counter-plaintiffs are entitled to indemnification from CHR.

Counter-plaintiffs are entitled to indemnity from CHR for any liability or damages arising from Underwriters claims against them under both express and implied theories. First, as alleged in the Counter Claims, the MAWB that lists CHR as shipper and Counter-Plaintiffs as carrier explicitly provides that "shipper shall indemnify Carrier for loss or expense due to shipper's failure to comply with" any "applicable laws and government regulations." *See* Ex. A at ¶¶ 10, 11, 29, and 46. To the extent that the evidence shows that any of CHR's negligence in handling the Cargo violated applicable laws or government regulations, then, CHR must indemnify Counter-plaintiffs for any resulting loss and damages due to Underwriters as assignee of Bausch's claims.

Further, and as specifically alleged in the Counter Claims, CHR and Counter-plaintiffs had pre-tort relationships that support an implied-indemnity claim – as shipper and carrier and as agent and carrier. *See* Ex. A at ¶¶ 47, 48. CHR, and the caselaw it cites, recognize that a pre-tort relationship between the parties can form the basis for an implied-indemnity claim. *See* DE 22, pp. 8-9 (citing Illinois cases). And the pre-tort relationship need not be one of the traditional relationships listed as examples in the caselaw, as CHR contends. *See, e.g., Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1356 (1st Dist. 1986) (extending implied-indemnity scope beyond the

"classic" relationships articulated in prior caselaw to an attorney-client relationship).  Here, the pre-tort relationship between Counter-plaintiffs and CHR arises not just from the parties' relative positions and roles, it is grounded in a contractual relationship as memorialized in the MAWB, giving rise to an even stronger connection on which to base an implied-indemnity claim.  *See Ill. Cent. Gulf R.R. v. American President Lines Inc.*, 515 N.E.2d 242, 246. (1st Dist. 1987) (contractual relationship through bill of lading sufficient to establish pre-tort relationship).  The test is whether there is implied indemnity that can be inferred from any quasi-contractual or contractual relationship between the parties.  Counter-plaintiffs' pleading has met that test here.

## II. Counter-plaintiffs' Counter Claims Based on the Montreal Convention State Claims Upon Which Relief May be Granted.

CHR's Motion to Dismiss should be denied in its entirety because the allegations in the Counter Claims establish that CHR served as a carrier and a carrier's agent within the meaning of the Convention for the Unification of Certain Rules for International Carriage, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 ("Montreal Convention"), which gives Counter-plaintiffs standing to assert their Montreal Convention claims against CHR, just as if CHR were another defendant in the case rather than one of the plaintiffs.

### a. Pursuant to the Montreal Convention, carriers are liable for damage to cargo sustained while the cargo was in the charge of the carrier.

Article 18 of the Montreal Convention, entitled "Damage to Cargo," provides that a carrier is liable for damage to cargo "upon the condition only that the event which caused the damage so sustained took place during the carriage by air. … The carriage by air within the meaning of [this] paragraph … comprises the period during which the cargo is in the charge of the carrier."  Montreal Convention, Art. 18(1) and (3).

Cargo is in the charge of the carrier when a carrier or its agent transports the cargo by

ground for the purposes of delivery pursuant to the carrier's contract for carriage by air of the cargo. *See* Montreal Convention, Art. 18(4) ("The period of carriage by air does not extend to any carriage by land … If, however, such carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air."); *see, e.g., Sun Coast Merch. Corp. v. Hecny Transportation, Inc*., No. 220CV11007CASJPRX, 2021 WL 674121, at *5 n.1 (C.D. Cal. Feb. 22, 2021) *("Sun Coast's argument that the Montreal Convention does not apply to cases where cargo is lost during carriage by land, as it argues is the case here, likely fails because, unlike the prior language used in Article 18 of the Warsaw Convention, the Montreal Convention does not limit the scope of coverage of [Article 18,] paragraph 3 to the period during which the carrier is in possession of the cargo at an airport or on board an aircraft[.]" (internal quotations omitted)). "In essence, if the event that caused the damage took place during the 'carriage by air,' as defined in the Montreal Convention, the carrier is strictly liable for damage sustained[.]" *Danner, v. Int'l Freight Sys. of Washington, LLC*, No. CIV.A. ELH-09-3139, 2013 WL 78101, at *13 (D. Md. 2013).

    b.  <u>CHR is a carrier within the meaning of the Montreal Convention.</u>

The application of the Montreal Convention is not limited to only actual carriers who conduct the air transportation of the cargo. *See* Montreal Convention, Art. 39; *see, e.g., Eli Lilly & Co. v. Air Exp. Int'l USA, Inc*., 615 F.3d 1305, 1307 (11th Cir. 2010) ("Although the exposure to sub-freezing temperatures was the result of human error attributable to Lufthansa, DHL is liable as a contracting carrier for any damage to the cargo."). Contracting carriers do not literally transport by air the cargo, but are carriers who make the contracts of carriage with the consignor and actual carrier. *See* Montreal Convention, Art. 39*; Tokio Marine & Nichido Fire Ins. Co. v.*

8

*Danzas Corp.*, No. 17 C 7228, 2018 WL 2214093, at *1 (N.D. Ill. 2018) (characterizing DHL as a "contract carrier" and the airline's ground handling agent as the carrier's agent "involved in the actual transportation of the cargo"). Not only did CHR transport the Cargo from Minnesota to Chicago and from Amsterdam to the final consignee in the Netherlands (*see* Exhibit A at ¶¶ 9, 13), CHR also arranged the contract for carriage for the consignor and Counter-plaintiffs. These actions constitute those of both and actual carrier and a contracting carrier, or indirect air carrier, to whom Articles 18 and 20 of the Montreal Convention apply. *See* Exhibit B; *see also Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1057 (11th Cir. 2009) (In the passenger context, "because Newvac knowingly assumed the responsibility to supply the aircraft and crew, and to otherwise conduct itself as a carrier, for the transportation of Globe Trotter's customers, it was a 'contracting carrier' within the meaning of Article 39 of the Montreal Convention."). During CHR's initial carriage of the Cargo from Chaska, Minnesota to Chicago O'Hare International Airport, the temperature of the Cargo spiked to 13°C, which is outside of the required 2-8°C range, for approximately seven hours. *See* Exhibit A at ¶ 9. During the six days that CHR did not pick up the Cargo at Amsterdam and during which CHR finally picked up the Cargo and transported it to the final consignee, the Cargo's temperature spiked outside of the required 2-8°C range. *See id.* at ¶¶ 12-14. These temperature excursions that arose during CHR's carriage caused the damage to the Cargo.

The MAWB was signed by Ms. Waligorski, on behalf of CHR as the "Issuing Carrier or Its Agent". Exhibit B. These express statements identify CHR as a carrier. *See Sun Coast Merch.*, 2021 WL 674121, at *5 n.1 ("Sun Coast's argument that the Montreal Convention does not apply because the complaint alleged Hecny acted as a 'freight forwarder,' not an 'air carrier,' is also likely unavailing because, as the consignee of the masks, Hecny was the 'contracting carrier,'

while United Airlines, apparently, was the 'actual carrier[.]').

CHR's actions demonstrate that CHR functioned as a carrier and the MAWB shows that CHR considered itself to be a carrier, which leads to the conclusion that CHR is a carrier within the meaning of the Montreal Convention. As a carrier, CHR can be held liable for the damage it caused to the Cargo during its carriage. *See* Montreal Convention, Art. 40 ("If an actual carrier performs the whole or part of carriage which, according to the contract referred to in Article 39, is governed by this Convention, both the contracting carrier and the actual carrier shall … be subject to the rules of this Convention, the former for the whole of the carriage contemplated in the contract, the latter solely for the carriage which it performs."). Accordingly, Counter-plaintiffs' Montreal Convention-based counter claims are claims upon which relief can be granted.

c.  <u>Alternatively, CHR is Counter-plaintiffs' agent and therefore an agent of a carrier within the meaning of the Montreal Convention.</u>

Even if CHR does not consider itself a carrier, CHR is a carrier's agent within the meaning of the Montreal Convention. A plain reading of the MAWB shows that KLM was the "Issuing Carrier" and that CHR, or its subsidiary C.H. Robinson ORD Gateway, was the "Issuing Carrier's Agent." Exhibit B. Additionally, Ms. Waligorski signed and executed the MAWB on behalf of CHR as the "Issuing Carrier or Its Agent." *Id.*; *see Com. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) (finding "it is incontrovertible that Gava S.p.A. was acting as an agent for Alitalia" because Gava S.p.A. identified itself in the air waybill as the "Issuing Carrier's Agent").

Article 30 of the Montreal Convention, entitled "Servants, Agents," provides that: "*If an action is brought against a servant or agent of the carrier* … such servant or agent … shall be entitled to avail themselves to the conditions and limits of liability which the carrier itself is entitled to invoke under this Convention." Montreal Convention, Art. 30(1) (emphasis added). The

conditional proposition in the first sentence of Article 30 makes clear that a claim based on the Montreal Convention can be brought against a carrier's agent and, in fact, the purpose of the Article is to provide guidance on what conditions and limitations apply in the event such action materializes. *See id*. Accordingly, CHR, as KLM's agent, can be held liable for the damage it caused to the Cargo during its carriage and therefore Counter-plaintiffs' Montreal Convention-based Counter Claims are claims upon which relief can be granted.

> d. Counter-plaintiffs have standing to assert their Counter Claims against CHR under the Montreal Convention.

In its Motion to Dismiss, CHR claims Counter-plaintiffs "do not have standing to sue under the Montreal Convention, since they are neither a passenger nor a consignee nor an assignee or a subrogee of a party of interest." DE 22, pp. 2, 5. CHR does not cite to any provision of the Montreal Convention or any case law to support its contention. *See generally id.* This lacuna in CHR's argument is understandable because "[t]here is no definitive or controlling case authority on the issue of standing and the right to sue under the Montreal Convention[.]" *Paramount Exp. Co. v. Brit. Airways PLC*, No. CV 14-07859-JEM, 2016 WL 7655805, at *7-8 (C.D. Cal. 2016) ("The Court concludes that the most important provision[] of the Convention bearing on standing and the right to sue in *this case* [is] Article 18 (cargo damage) … The Court also concludes that the right to sue conferred by th[is] Article[] is not dependent on who has the right of disposition of cargo." (emphasis added)); *see Com. Union Ins.*, 347 F.3d at 459-60 ("These courts do not identify any specific restriction on standing for cases of non-successive carriage. … Articles 12–14, where the conferral of standing is rooted, discuss only rights of parties to exercise control of goods in transit, and do not speak to standing, let alone limit it."); *accord Lufthansa German Airlines v. Am. Airlines, Inc*., 797 F. Supp. 446, 452 (D.V.I. 1992) ("While American Airlines is correct that Articles 12 and 13 of the [Warsaw] Convention generally limit the right to sue to the

11

consignor or consignee, these provisions, when read in conjunction with Articles 14 and 15, have been construed broadly to permit parties other than the named consignee or consignor to maintain an action under the [Warsaw] Convention."); *cf. Ekufu v. Iberia Airlines*, No. 12 CV 6669, 2014 WL 87502, at *3 (N.D. Ill. 2014) (plaintiffs lacked standing because they were not parties to the agreement between the passenger and the airline for transportation).

The relevant Article in this case is Article 40 of the Montreal Convention, which provides that "where an action for damages is brought against a contracting carrier or an actual carrier, but not both, that carrier shall have the right to require the other carrier to be joined in the proceedings[.]" *AGCS Marine Ins. Co. v. Geodis Calberson Hungaria Logisztikai KFT*, No. 16-CV-9710 (JMF), 2017 WL 5891818, at *3 (S.D.N.Y. 2017) (internal quotations omitted); *see* Montreal Convention, Art. 40. Here, Counter-plaintiffs, the actual carriers, have the right to require CHR, the contracting carrier, "to be joined in the proceedings." Montreal Convention, Art. 40. Because CHR is a plaintiff in this action and therefore already participating in the proceedings, the only way for Counter-plaintiffs to join CHR is to file counter claims against it.

Further, Counter-plaintiffs' Montreal Convention-based counter claims assert CHR's liability as a carrier for Plaintiffs' alleged damages by showing that no exception under Article 18 or exoneration under Article 20 applies. CHR asserts that it is unaware of any case in which "the Montreal Convention [was used] as a sword, rather than merely a potential shield from strict liability[,]" but this situation regularly arises in actions between carriers because a carrier has standing to sue another carrier under Article 40 of the Montreal Convention. *See generally Chubb Ins. Co. of Eur. S.A. v. Menlo Worldwide Forwarding, Inc*., 634 F.3d 1023, 1026 (9th Cir. 2011) ("Other Articles [of the Montreal Convention] establish limits on a carrier's liability … Still other Articles impose conditions on the filing of an action for damages against a carrier."); *cf. AGCS*

*Marine Ins.*, 2017 WL 5891818, at *3 (In a third-party action by a contracting carrier against an actual carrier, the court decided the statute of limitation in Article 35 of the Montreal Convention did not apply because the third-party action was for indemnification and contribution, not damages.).  Given Counter-plaintiffs have proper standing to sue CHR under the Montreal Convention, Counter-plaintiffs' Montreal Convention-based counter claims are claims upon which relief can be granted.

## CONCLUSION

For all of the foregoing reasons, Counter-plaintiffs respectfully request that the Court deny CHR's Motion to Dismiss in its entirety.

## ORAL ARGUMENT REQUESTED

Counter-plaintiffs believe the Court would be assisted by oral argument, and accordingly, respectfully request the opportunity to orally argue this motion before the Court.

Dated: Chicago, Illinois
      April 20, 2021

By: */s/ Lydia A. Bueschel*        
Lydia A. Bueschel
VALENTINE AUSTRIACO &
BUESCHEL, P.C.
105 West Adams Street, 35th Floor
Chicago, Illinois 60603
Telephone: (312) 288-8285
Email:    lbueschel@VABlawfirm.com

  - and -

Bartholomew J. Banino
Mirin E. Park
CONDON & FORSYTH LLP
7 Times Square, Suite 1800
New York, New York 10036
Telephone: (212) 490-9100
Email:    bbanino@condonlaw.com
Email:    mpark@condonlaw.com

*Attorneys for Defendant*
KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V. and
SOCIETE AIR FRANCE

**CERTIFICATE OF SERVICE**

I hereby certify the foregoing COUNTER-PLAINTIFFS' OPPOSITION TO COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTER-PLAINTIFFS' FIRST AMENDED COUNTER CLAIMS was electronically filed with the Clerk of the Court using the CM-ECF system on April 20, 2021, which will send notification of such filing to all counsel of record.

*/s/ Lydia A. Bueschel*
Lydia A. Bueschel