IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, assignee of BAUSCH HEALTH NETHERLANDS; and C.H. ROBINSON WORLDWIDE INC., <br><br> Plaintiffs <br> v. <br><br> KONINKLIJKE LUCHTVAART MAATSHAPPIJ N.V.; SOCIETE AIR FRANCE, <br><br> Defendants. | Case No. 1:20-cv-06474 <br><br> Hon. Charles R. Norgle |

## ORDER

Plaintiff/Counter Defendant C.H. Robinson Worldwide Inc.'s motion to dismiss Defendants' counterclaims [21] is granted.

## MEMORANDUM OPINION

This case arises from a shipment gone sour. Plaintiffs filed a complaint alleging that Defendants did not timely ship or adequately store certain medicine on its journey from Chicago to the Netherlands, causing the medicine to spoil. Defendants filed counterclaims under the Montreal Convention and under state law alleging that any fault for the spoiled shipment lies with Plaintiff CH Robinson Worldwide, Inc., the logistics provider responsible for coordinating the shipment ("Logistics Provider"), which Defendants allege improperly stored the medicine prior to its shipment and belatedly picked up the shipment from its destination in the Netherlands. The Logistics Provider moves to dismiss those counterclaims. For the reasons below, the motion is granted.

I. BACKGROUND

In late 2018, the Logistics Provider shipped temperature-sensitive medicine from a manufacturing facility in Minnesota that was destined for Amsterdam. Dkt. 11, ¶ 9. Bausch Health Netherlands ("Bausch") purchased the medicine and had planned to distribute it to health clinics in the Netherlands. Id. ¶¶ 2, 11. Bausch recruited Logistics Provider to arrange "for the loading, delivery or transshipment of the subject cargo for purposes of its carriage by air." Id. ¶ 4. The Logistics Provider made arrangements to ship the cargo from the manufacturing facility in Minnesota to the Chicago O'Hare airport, where it would be given to Defendants Koninklijke Luchtvaart Maatshappij N. V. ("KLM") and Societe Air France ("Air France") to ship by air to the Netherlands. Id. at 13. The medicine needed to be kept at 2-8° Celsius, approximately 35-46° Fahrenheit, and had labels reading "Protect from Heat." Id. ¶ 20.

According to the complaint, the cargo was carried by the Logistics Provider to O'Hare by truck and delivered on October 31, 2018 shortly after midnight. Id. The cargo was supposed to fly on "a direct KLM flight No. 612 going directly to the Amsterdam Schiphol Airport (the Netherlands), located only about 4.6 miles away from the intended final delivery destination for the Medicaments," and was expected to be delivered to its final destination on November 2, 2018. Id. ¶ 12. Instead, according to the complaint, the cargo "arrived in Amsterdam from Paris by truck, on a Saturday, November 3, 2018. . . [and] . . . the Cargo remained at KLM's warehouse from November 3, 2018 to November 9, 2018." Id. ¶ 12. "The Cargo was delivered to Bausch' facility thereafter on Friday November 9, 2018." Id. The complaint alleges that KLM and Air France "utterly failed to maintain the required temperature. According to a temperature recorder that accompanied the Cargo, Defendants' excursion with the Cargo resulted in a total period with

2

temperatures above 8°C (high alarm) of approximately 6 full days, 22 hours and 21 minutes." Id. ¶ 21. The medicine spoiled, forcing Bausch to dispose of it. Id. ¶ 24.

Defendants tell a different story. Defendants say that the Logistics Provider, when transporting the cargo to O'Hare, let the temperature of the cargo increase to 13°C and let it remain outside of the "2-8°C range for a cumulative seven hours." Dkt. 18 at 3. The Logistics Provider, they say, "was responsible for selecting the Cargo's packaging and chose to transport the Cargo in air containers, which is inadequate packaging for temperature-sensitive cargo that requires a consistent temperature range of 2-8°C." Id. at 5. Further, once the cargo arrived in Amsterdam, Defendants repeatedly emailed the Logistics Provider "several times per day for the following six days to request that [the Logistics Provider] pick up the Cargo" and "six days after the Cargo arrived in Amsterdam, [the Logistics Provider] picked up the Cargo." Id. at 3.

Because Bausch's medicine spoiled, Bausch filed a claim and received compensation from both the Logistics Provider and Bausch's insurance company, Plaintiff Certain Underwriters At Lloyd's ("Bausch Insurer"). Bausch assigned to Bausch Insurer the rights to pursue this action against KLM and Air France. There are no allegations that KLM or Air France paid any money to Bausch, Bausch Insurer, or the Logistics Provider. Nor are there any allegations that Defendants were otherwise harmed by the spoiling of the cargo.

Bausch Insurer and the Logistics Provider filed a complaint here alleging that KLM and Air France had violated the Montreal Convention by failing to timely deliver and adequately protect their cargo. Further, Plaintiffs claim that by "unilaterally and rerouting" the medicine, Defendants are liable for trespass to chattel. KLM and Air France answered, raised affirmative defenses, and filed counterclaims against the Logistics Provider under the Montreal Convention

3

and Illinois law. The Logistics Provider now moves to dismiss those counterclaims. For the reasons set out below, the Court grants the motion to dismiss Defendants' counterclaims.

## II. DISCUSSION

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). In reviewing a plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). However, the facts pleaded in the complaint must form a legally cognizable claim to survive a motion to dismiss. Fifth Third Bank v. Hirsch, 2011 WL 2470643, at *2 (N.D. Ill. June 20, 2011).

The Convention for International Carriage by Air is a treaty to which the United States is a party that was signed in 1999 in Montreal, Canada. ("Montreal Convention"). See Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. 106-45, ICAO Doc. No. 9740, 1999 WL 33292734 (entered into force Nov. 4, 2003) ("M. Conv."). Under "the Supremacy Clause, treaties are 'the supreme Law of the Land.'" Doe v. Etihad Airways, P.J.S.C., 870 F.3d 406, 411 (6th Cir. 2017). The treaty has not been amended since it was signed over 20 years ago. The Montreal Convention governs liabilities of air carriers for persons or cargo in international travel. M. Conv., art. 1. With respect to cargo, the Montreal Convention holds air carriers strictly liable for damage to cargo, subject to certain defenses:

> Under the Montreal Convention, a "carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Montreal

4

> Convention, Art. 18(1). In essence, if the event that caused the damage took place during the "carriage by air," as defined in the Montreal Convention, the carrier is strictly liable for damage sustained, subject to certain enumerated affirmative defenses.

Danner, v. Int'l Freight Sys. of Washington, LLC, 2013 WL 78101, at *13 (D. Md. Jan. 4, 2013); M. Conv., art. 18(1) ("The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air.").

The defenses to strict liability are enumerated in Article 18(2) of the Montreal Convention:

> [T]he carrier is not liable if and to the extent it proves that the destruction, or loss of, or damage to, the cargo resulted from one or more of the following:
>
> (a) inherent defect, quality or vice of that cargo;
> (b) defective packing of that cargo performed by a person other than the carrier or its servants or agents;
> (c) an act of war or an armed conflict;
> (d) an act of public authority carried out in connection with the entry, exit or transit of the cargo.

M. Conv. art. 18(2). Further, "[i]f the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he or she derives his or her rights, the carrier shall be wholly or partly exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage." Id. at art. 20.

The Montreal Convention generally preempts other laws that impose liability for damage to cargo or harm to passengers occurring during international flights. Yahya v. Yemenia-Yemen Airways, 2009 WL 2711955, at *3 (E.D. Mich. Aug. 25, 2009) ("The Montreal Convention, as did the Warsaw Convention, preempts remedies under domestic law, whether or not the application of the Montreal Convention will result in a recovery in a particular case. Recovery for a personal injury suffered on board an aircraft if not allowed under the Convention, is not available at all."

5

(cleaned up)). There is an exception, however, for indemnification and contribution claims, because while "the Montreal Convention does not create a cause of action for indemnification or contribution among carriers, it does not preclude such actions as may be available under local law." Chubb Ins. Co. of Eur. S.A. v. Menlo Worldwide Forwarding, Inc., 634 F.3d 1023, 1026 (9th Cir. 2011). "The Montreal Convention refers to these local law causes of action for indemnification, contribution, apportionment, or set-off, not as a 'right to damages,' but as a 'right of recourse.'" Id. at 1027.

In this case, the assignee of Bausch, Bausch Insurer, and the Logistics Provider, both paid Bausch to compensate it for the damage to the medical cargo and they now seek compensation from Defendants Air France and KLM for Defendants' alleged role in damaging that cargo. In response, Air France and KLM asserted numerous affirmative defenses, including several defenses provided for in the Montreal Convention. Dkt. 11 at 9-2. But curiously, Defendants also assert counterclaims for affirmative liability against the Logistics Provider under the Montreal Convention, even though there are no allegations that Defendants paid Bausch or anyone else for the damages to the cargo or were otherwise harmed by the spoiled medicine.

The Logistics Provider's motion to dismiss Defendants' counterclaims argues that Defendants have essentially recast their affirmative defenses under the Montreal Convention as counterclaims seeking affirmative liability. The Logistics Provider argues that there is no basis for any such counterclaim under the Montreal Convention, and that Defendants should not be permitted "to use the Montreal Convention as a sword, rather than merely a potential shield from strict liability," because doing so would "flip the Montreal Convention on its head." Dkt. 22 at 5. In response, Defendants argue that Logistics Provider was a carrier under the Montreal Convention and was negligent in its handling of the shipment and thus meets the criteria for suit under the

6

Montreal Convention. See dkt. 24 at 7-10. The Logistic Provider's argument in reply is that even assuming that is true, it would be the basis for the assertion of an affirmative defense on the Logistics Provider's claims, potentially reducing or eliminating the liability Plaintiffs seek from Defendants. It would not, however, be a basis for an affirmative claim for liability. Defendants cannot seek compensation for a harm they did not experience, Plaintiffs argue.

Plaintiffs make several additional arguments as to why these claims should be dismissed, but the Court must first address subject matter jurisdiction, even though the parties did not raise the issue in their memoranda.

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2202 (2021). No harm, no foul, no standing. Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 331 (7th Cir. 2019); Pennell v. Glob. Tr. Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC, 2021 WL 2599472, at *6. Standing must be established for every claim, counterclaim, and form of relief sought. Town of Chester, N.Y. v. Laroe Ests., Inc., 137 S. Ct. 1645, 1650 (2017) ("Our standing decisions make clear that standing is not dispensed in gross. To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (cleaned up)).

Defendants lack standing to assert their counterclaims under the Montreal Convention and for common law negligence because there is no allegation that Defendants were harmed by the

7

spoiled shipment or otherwise by the Logistics Provider. See generally dkt. 18 at 1-3. Plaintiffs raise numerous other reasons why these claims should be dismissed, but this Court may proceed no further once it has determined it lacks subject matter jurisdiction. Accordingly, Defendants' counterclaims under the Montreal Convention and its counterclaim for negligence, Counts I-IV, are dismissed.

The Logistics Provider also moves to dismiss Counts V and VI of Defendants' Counterclaims which are Illinois state law claims for contribution and indemnity. These claims, in contrast to Defendants' counterclaims for affirmative liability, seek to shift any liability Defendants may have for spoiling the cargo to the Logistics Provider. The Logistics Provider argues that these should nonetheless be dismissed because Defendants (1) failed to provide a written indemnity agreement for their indemnification claim and (2) brought a claim for contribution under the wrong Illinois statute.

On indemnity, Defendants referenced but did not attach an indemnification agreement to their amended counterclaims. See dkt. 18 ¶¶ 6, 46-52. The Logistics Provider argues that this readily-available agreement should have been filed with the amended counterclaims. Dkt. 25 at 10. The Court agrees and will dismiss the claim for indemnification, but without prejudice. See Ray v. CitiMortgage, Inc., 2019 WL 6827640, at *1 (N.D. Ill. Dec. 13, 2019) ("[I]f a claim is based on a written contract, that contract must be attached to the pleading . . . ."). Defendants may amend their counterclaim for indemnification within 21 days of this order to include the indemnification agreement.

On contribution, the Logistics Provider argues that Defendants cannot seek contribution from it, a plaintiff in the case. Further, Logistic Provider argues that Defendants' counterclaims should have been filed under the Illinois Joint Tortfeasors Contribution Act rather than 735 ILCS

8

5/2-1116 and 5/2-1117, which are not causes of action, but rather rules related to the affirmative defense of contributory fault in negligence cases. The Court agrees that there is no independent cause of action under these statutes and thus dismisses the claim. See <u>Fifth Third Bank v. Hirsch</u>, 2011 WL 2470643, at *2 (N.D. Ill. June 20, 2011). Defendants may amend their counterclaim for contribution within 21 days of this order. Should Defendants amend their counterclaims for indemnification and contribution, Plaintiffs shall answer or otherwise plead within 21 days of the filing of the amended counterclaims.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 3, 2021